## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS KAIRYS, | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-CV-1031-NR |
| | ) | |
| v. | ) | |
| | ) | |
| SOUTHERN PINES TRUCKING, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

In late 2016, Plaintiff Thomas Kairys was diagnosed with degenerative arthritis in both of his hips. This condition caused him to develop a limp, and necessitated hip-replacement surgery. That surgery took place in November 2017. Less than five months later, he was fired from his executive position at Defendant Southern Pines Trucking, Inc. He now alleges that this firing was directed by Southern Pines's CEO, Pat Gallagher, in retaliation for costs the company incurred under its self-funded health insurance plan as a result of Mr. Kairys's surgery. For its part, Southern Pines disputes this narrative, and contends that Mr. Kairys was instead fired based on Mr. Gallagher's determination that the company "didn't need [a] $150,000 sales person at that time." Following discovery, Southern Pines moves for summary judgment on all of Mr. Kairys's employment-discrimination and wage claims, while Mr. Kairys cross-moves as to his wage claims, only.

Applying the familiar standard of Rule 56, the Court will deny Southern Pines's motion and grant in part Mr. Kairys's cross-motion. With respect to Southern Pines's motion, the Court concludes that Mr. Kairys has presented evidence from which a jury could conclude that he was retaliated or discriminated against in violation of the ADA, the ADEA, ERISA, or the PHRA. As for Mr. Kairys's cross-

motion, the Court agrees with Mr. Kairys that there is no genuine dispute of fact as to whether Southern Pines breached its contractual obligation by failing to pay him the separation pay provided for in his employment agreement.  It did.  However, a jury must decide what damages, if any, are owed for this breach, because there is a dispute of material fact as to whether Southern Pines is entitled to an offset based on alleged overpayment for unreported vacation time.  Further, the Court will deny summary judgment to Mr. Kairys on his state Wage Payment and Collection Law claim.  On that issue, the Court again finds that a jury must resolve the offset question raised by Southern Pines and, further, that Southern Pines has identified a genuine dispute of material fact as to whether its failure to pay Mr. Kairys was in bad faith.

For all these reasons, discussed in full below, the Court will (1) deny Southern Pines's summary-judgment motion as to all claims; (2) grant Mr. Kairys's summary-judgment motion on his contract claim with respect to *liability only*, reserving any damages determinations for the jury; and (3) deny Mr. Kairys's summary-judgment motion as to his WPCL claim for unpaid wages.

## BACKGROUND

## I.   Mr. Kairys's employment as Southern Pines's Vice-President of Sales.

Mr. Kairys served as Southern Pines's  Vice-President of Sales from March 14, 2016 until April 23, 2018.  In that capacity, he was responsible for growing Southern Pines's "cryogenic" trucking business.  ECF 52-1, pp. 19:16-19, 21:12-18.  His duties included entertaining top customers, maintaining sales, contracting with cryogenic customers, securing non-hazmat loads to help grow overall sales, and performing other matters related to the company's operations.  *See, e.g.,* ECF 52-2, pp. 6:11-7:23, 12:25-13:21, 16:8-17:18, 21:19-22:11; ECF 52-1, pp. 30:20-37:11.

## II.    Mr. Kairys's degenerative arthritis and need for hip surgery.

In October 2016, Mr. Kairys was diagnosed with degenerative arthritis in both hips, and learned that he would need to have hip-replacement surgery.  ECF 52-2, p. 44:13-20.  If he did not have that surgery, his ability to walk would continue to deteriorate and his pain would worsen.  ECF 50-1, ¶ 5.  Mr. Kairys testified that, in the summer of 2017, he told his supervisor, Chad Vittone, that he needed to have his hip replaced, after Mr. Vittone saw him limping.  ECF 52-2, pp. 45:15-46:4.  Around that same time, Mr. Kairys claims that Southern Pines's CEO, Pat Gallagher, also saw him limping, and that he told Mr. Gallagher about his anticipated surgery at that time. ECF 52-2, pp. 47:21-48:15.

On November 6, 2017, Mr. Kairys notified Mr. Vittone by email that he would be out of work for a week due to his scheduled surgery.  ECF 52-11; ECF 52-20, p. 32:7-18.  Mr. Kairys underwent hip-replacement surgery on November 30, 2017 and missed work until December 12, 2017.  ECF 52-2, pp. 42:10-11, 65:17-19.  Mr. Gallagher admitted that he was "upset" when he found out about the surgery, but claimed that this was only because he did not know about it in advance.  ECF 52-1, pp. 53:8-14, 55:4-7.  However, as noted above, Mr. Kairys testified that he had, in fact, mentioned his surgery to Mr. Gallagher in advance.  ECF 52-2, pp. 47:21-48:15.

## III.    Southern Pines's medical expenses related to Mr. Kairys's surgery.

Mr. Kairys's medical expenses were covered under Southern Pines's employee health insurance plan.  ECF 52-12, Resp. to RFA No. 1.  Southern Pines has a self-funded insurance policy, meaning that it pays a portion out of pocket for each claim made on the policy.  *See id.*; ECF 52-20, p. 38:11-14.  The company periodically receives invoices itemizing the cost of medical claims for its employees.  ECF 52-9. The invoices show weekly charges for claims processed by date.  *Id*.

Mr. Kairys testified that Southern Pines's Vice-President of Operations, Bob Gallagher, informed him that Mr. Gallagher's brother, CEO Pat Gallagher, would not

be happy about the cost of the surgery. ECF 52-2, pp. 48:24-50:9. According to Mr. Kairys, Bob Gallagher told Mr. Kairys that he had spoken with Pat Gallagher about the surgery, and he then explained to Mr. Kairys that Southern Pines had a self-funded insurance policy, meaning that the company would have to pick up part of the cost. *Id.* at pp. 50:22-51:13. According to Mr. Kairys, Pat Gallagher later appeared agitated when asking Mr. Kairys about his surgery at a holiday luncheon. *Id.* at p. 69:2-14.

After Mr. Kairys's November 30, 2017, surgery, Southern Pines did, indeed, incur a large spike in medical costs. The related invoice amount of $23,277.07 for claims processed the week of December 10 through 16, 2017 was, by far, the highest weekly invoice for employee medical expenses over a six-month period. *See* ECF 52-9, PDF p. 14. By comparison, the second highest invoice during that period was about $15,000; the vast majority of weekly invoices were under $6,000; and many weekly invoices came in under $2,000. *See generally* ECF 52-9.

## IV.    Mr. Kairys's termination.

Less than five months later, on April 23, 2018, Mr. Vittone and Chief Administrative Officer Gerald Hickly notified Mr. Kairys of his termination. ECF 52-4, pp. 7:5-7, 36:22-37:6. It is undisputed that CEO Pat Gallagher was the sole decisionmaker. ECF 52-1, p. 96:11-19. In explaining his decision, Mr. Gallagher claimed that Mr. Kairys's position was eliminated because the company "didn't need the $150,000 salesperson at that time," *id.* at p. 102:3-5, as it had "pretty much maxed out [its] sales capacity based on the amount of trucks and trailers [it had]." *Id.* at 97:13-15. Mr. Gallagher testified that he did not recall when he decided to eliminate Mr. Kairys's position; how soon before Mr. Kairys's termination that decision was made; or whether he had consulted or communicated with anyone regarding Mr. Kairys's termination before making his decision. *Id.* at pp. 99:24-100:18.

In June 2018, about a month and a half after Mr. Kairys was terminated, a 26-year-old, non-disabled employee named Kyle Kunkle began working for Southern Pines as an "Operations Manager."  ECF 52-7, pp. 7:17-8:3; ECF 56-1.  His duties included customer maintenance and customer service.  ECF 52-7, p. 11:11-20; ECF 56-1.  Along with Bob Gallagher and Jonathan Wright, Mr. Kunkle would visit customers as a representative of Southern Pines.  ECF 52-7, pp. 13:9-15, 14:9-15:10.

## V.   Mr. Kairys's employment agreement and entitlement to separation pay.

At the start of his employment with Southern Pines, Mr. Kairys signed a Confidentiality and Non-Solicitation Agreement that also provided for separation pay to Mr. Kairys should his employment end "for reasons other than those related to misconduct…"  Specifically, Mr. Kairys would be entitled to one week of salary for every full year of service from his start date, up to a maximum of 30-weeks pay.  ECF 52-10, ¶ 1.  It is undisputed that Mr. Kairys was not terminated for any misconduct.

At Mr. Kairys's termination meeting, Southern Pines tried to get him to sign a Separation Agreement that would have provided two weeks of separation pay (amounting to one week for each year of his service, as he was originally owed under his employment agreement), but also required him to release Southern Pines from all claims and agree to broader restrictive covenants with a liquidated damages provision.  ECF 52-13; ECF 52-2, pp. 103:8-10.  Mr. Kairys refused to sign the new agreement, and Southern Pines did not pay him any separation wages.  ECF 52-2, pp. 102:23-103:13; ECF 52-14.  To date, Mr. Kairys has not received any such wages.

## VI.   Mr. Kairys's claims and the pending motions for summary judgment.

In his operative third amended complaint, Mr. Kairys asserts claims against Southern Pines for disability discrimination and retaliation under the ADA (Count I), discrimination under the ADEA (Count II), retaliation under Section 510 of ERISA (Count III),  breach of contract (Count IV), violations of the Pennsylvania Wage

Payment and Collection Law ("WPCL") (Count V), and discrimination and retaliation under the Pennsylvania Human Relations Act ("PHRA") (Count VI).

With respect to his ADA claims (Count I), Mr. Kairys alleges that he is disabled by his arthritis because it substantially limits him in major life activities—namely, walking.  ECF 74, ¶ 44.  Based on the facts described above, Mr. Kairys contends that Southern Pines's CEO, Pat Gallagher, fired him based on his disability and/or in retaliation for his request for medical leave to obtain treatment for that disability (hip-replacement surgery).

With respect to his ADEA claim (Count II), Mr. Kairys alleges that he was 51 years old at the time of his firing and substantially replaced after his firing by a 26-year-old employee, Kyle Kunkle.  *Id.* at ¶¶ 38-40.  Based on his age, the age of his alleged replacement, and the facts described above, Mr. Kairys contends that Southern Pines fired him based on age-related animus, as well.  *Id.* at ¶ 54.

With respect to his ERISA claim (Count III), Mr. Kairys alleges that Southern Pines maintains a self-funded health plan that qualifies as an employee benefit plan governed by ERISA.  *Id.* at ¶ 58. Based on the facts above, Mr. Kairys contends that Southern Pines fired him to interfere with his rights under that benefit plan—namely, his right to use medical benefits to pay for his surgery.  *Id.* at ¶ 59.

With respect to his breach of contract and WPCL claims (Counts IV and V), Mr. Kairys alleges that Southern Pines improperly refused to pay him separation wages due under his employment agreement, as he was not terminated for any misconduct.  *Id.* at ¶ 62.

Finally, with respect to his PHRA claim (Count VI), Mr. Kairys asserts that the same disability- and age-related discrimination discussed above also violates the PHRA, a Pennsylvania statute analogous to the ADA and ADEA.  *Id.* at ¶¶ 74-75.

Following discovery, Southern Pines has moved for summary judgment on all of Mr. Kairys's claims.  ECF 51; ECF 53; ECF 60.  Mr. Kairys opposes Southern

Pines's motion, and also cross-moves for summary judgment on his breach of contract (Count IV) and WPCL (Count V) claims.  ECF 49; ECF 55; ECF 59.  Both motions are now fully briefed and ready for decision.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In making that determination, the Court asks whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is warranted.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making that decision, the Court must "consider all evidence in the light most favorable to the party opposing the motion." *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 794 (3d Cir. 2007).

Simply put, summary judgment is "'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citation omitted).

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).  The parties' filing of cross-motions "does not constitute an agreement that if one is rejected the other is necessarily justified[.]"  *Id.*  But the Court may "resolve cross-motions for summary judgment concurrently." *Hawkins v. Switchback MX, LLC*, 339 F. Supp. 3d 543, 547 (W.D. Pa. 2018) (Conner, J.) (citations omitted).  When doing so, the Court

views the evidence "in the light most favorable to the non-moving party with respect to each motion." *Id.*

## DISCUSSION & ANALYSIS

**I.    The Court will deny Southern Pines's motion for summary judgment as to Mr. Kairys's discrimination and retaliation claims.**

In its motion for summary judgment, Southern Pines argues that Mr. Kairys has failed to raise a genuine dispute of material fact as to any of his claims.  The Court disagrees, for the following reasons.

### A.    Mr. Kairys has raised a genuine issue of material fact as to his ADA, PHRA, and ERISA claims.

The Court will begin by addressing Mr. Kairys's disability and ERISA claims together, as the analysis of those claims is similar.

The familiar *McDonnell Douglas* burden-shifting framework applies to all of Mr. Kairys's ADA, PHRA, and ERISA claims.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Jakomas v. City of Pittsburgh,* 342 F. Supp. 3d 632, 642 (W.D. Pa. 2018) (Hornak, C.J.) (ADA); *DiFederico v. Rolm Co.,* 201 F.3d 200, 205 (3d Cir. 2000) (ERISA).[1]  Thus, Mr. Kairys bears an initial burden of presenting a *prima facie* case of discrimination or retaliation.  Once met, the burden shifts to Southern Pines to articulate a non-discriminatory explanation for Mr. Kairys's firing.  If it does so, the burden then finally returns to Mr. Kairys, who must present evidence that casts doubt on Southern Pines's proffered explanation, such that a jury could reasonably conclude that it was merely a pretext for unlawful discrimination.  To

---

[1] Except as otherwise noted below, the PHRA is coextensive with the ADA and ADEA, and so the same standard applies to Mr. Kairys's PHRA claim. *See  Katz v. UPMC*, No. 16-1627, 2019 WL 3843041, at *5 (W.D. Pa. Aug. 15, 2019) (Cercone, J.) ("Pennsylvania courts construe the parallel provisions of the PHRA to be coextensive with their federal counterparts. … The PHRA should be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language justifying a different construction." (cleaned up)), *aff'd*, 835 F. App'x 664 (3d Cir. 2020).

establish pretext, Mr. Kairys must point to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence … and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (cleaned up).  In the context of summary judgment, of course, the Court views the evidence in the light most favorable to Mr. Kairys at all stages of this analysis.

### i.  Mr. Kairys has presented a *prima facie* case of ADA discrimination, ADA retaliation, and ERISA retaliation.

To begin with, Mr. Kairys has established a *prima facie* case of ADA discrimination, ADA retaliation, and ERISA retaliation.

### 1.  Mr. Kairys's *prima facie* case of ADA discrimination.

"A plaintiff presents a prima facie case of discrimination under the ADA by demonstrating: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) (citation omitted).

Here, there is enough evidence to establish that Mr. Kairys is disabled.  That is, Mr. Kairys's degenerative arthritis—which caused him to develop a visible limp and necessitated hip-replacement surgery—is sufficiently debilitating and non-transitory to constitute a disability under the ADA and PHRA.[2] *Cf. Johnson v.*

---

[2] There appears to be some disagreement among federal and state courts in Pennsylvania as to whether the PHRA's definition of a "disability" remains coextensive with the definition of "disability" under the ADA, in light of amendments made to the ADA without any corresponding amendments to the PHRA.  *See Morgenfruh v. Larson Design Grp., Inc.,* No. 18-21, 2019 WL 4511711, at \*2 n.37 (M.D. Pa. Sept. 19, 2019) ("The ADA and the PHRA were interpreted coextensively for disability discrimination claims prior to the enactment of the ADA Amendments Act (ADAAA) in 2008 … but neither the Pennsylvania Supreme Court nor the Third

*Bennett Auto Supply, Inc.*, 319 F. Supp. 3d 1278, 1284 (S.D. Fla. 2018) ("Plaintiff's arthritis is a disability, as the arthritis is an impairment that substantially limits the plaintiff's major life activities since the Plaintiff can no longer stand or sit for long periods of time."); *Medearis v. CVS Pharmacy*, 92 F. Supp. 3d 1294, 1304 (N.D. Ga. 2015) ("[H]is rheumatoid arthritis constitutes a disability.") *aff'd,* 646 F. App'x 891 (11th Cir. 2016).

Beyond evidence of a disability, Mr. Kairys must provide evidence of an adverse employment action and a causal link between his disability and the adverse action. With respect to the former, Southern Pines does not dispute that Mr. Kairys suffered an adverse employment action when he was terminated. And as to a causal link, Mr. Kairys has presented sufficient evidence to link his disability to his

---

Circuit has provided guidance on whether the PHRA continues to be coextensive following the ADAAA's expansion of qualifying disabilities."), *aff'd*, 826 F. App'x 141 (3d Cir. 2020); *Gucker v. U.S. Steel Corp.*, 212 F. Supp. 3d 549, 559 (W.D. Pa. 2016) (Fischer, J.) ("[D]istrict courts in the Third Circuit are split with respect to whether the ADA standard and the PHRA standard continue to be coextensive."); *Myatt v. Vill.*, No. 19-130, 2019 WL 2288116, at *2 n.5 (E.D. Pa. May 29, 2019) ("Nevertheless, in at least one instance, the Pennsylvania Commonwealth Court determined the ADA and the PHRA remain coextensive.") (citing *Lazer Spot, Inc. v. Pa. Human Relations Comm'n*, No. 459 C.D. 2017, 2018 WL 670621, at *4-5 (Pa. Commw. Ct. Feb. 2, 2018)).

Southern Pines does not raise this potential distinction as a basis for summary judgment on Mr. Kairys's PHRA claim, here. And in any event, for purposes of this motion, the Court need not wade into the divide. When viewed in the light most favorable to Mr. Kairys, the record evidence establishes that he was disabled under either standard, given the considerable impairment that his arthritis caused to his ability to walk, which would have continued to degenerate if he did not obtain hip-replacement surgery. *See* ECF 56-2, ¶¶ 3-5; *see also Poper v. SCA Americas, Inc.*, No. 10-3201, 2012 WL 3288111, at *8, n.7 (E.D. Pa. Aug. 13, 2012) ("The ADAAA thus overrules the Supreme Court's definition of 'substantially limit' as requiring significant restriction in comparison to the general population."). To the extent Southern Pines intends to separately dispute Mr. Kairys's disability status under the PHRA at trial, the parties can address the appropriate standard to instruct the jury closer to that date. *See Rocco v. Gordon Food Serv.*, 998 F. Supp. 2d 422, 426 (W.D. Pa. 2014) (Conti, C.J.) ("Whether an individual is substantially limited in performing a major life activity is a question of fact."), *aff'd*, 609 F. App'x 96 (3d Cir. 2015).

termination.  As the Third Circuit has recognized, there is a "broad array of evidence" that can establish the requisite causal connection.  *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (citation omitted).  Sometimes that evidence relates to suggestive timing (*e.g.*, discriminatory statements or conduct occurring a few days before termination), or a pattern of antagonism (*e.g.*, discriminatory statements by supervisors).  *See id.* (discussing circumstances in which "proximity in time" or a "pattern of antagonism" can demonstrate causation).  But it doesn't have to.

"It is important to emphasize that it is causation, not temporal proximity or evidence of antagonism, that is an element of [the] plaintiff's prima facie case, and temporal proximity or antagonism merely provides an evidentiary basis from which an inference can be drawn."  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (cleaned up).  Indeed, the Third Circuit has warned against taking "too restrictive a view of the type of evidence that can be considered probative of the causal link."  *Id.*  "Rather, it can be other evidence gleaned from the record as a whole from which causation can be inferred."  *Id.*; *see also Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017) ("The element of causation, which necessarily involves an inquiry into the motives of the employer, is highly context-specific." (citation omitted)).

Here, while Mr. Kairys does not present evidence of suggestive proximity or a long pattern of antagonistic conduct, the record evidence, as a whole, reflects sufficient evidence from which causation can be inferred.  That is, Mr. Kairys has presented evidence that Southern Pines's CEO, Mr. Gallagher, was the sole decisionmaker in his termination.  He has presented evidence that Mr. Gallagher knew about his hip-replacement surgery, and, on several occasions, was upset about the company incurring the costs of that surgery.  Mr. Gallagher, then, seemingly out of the blue, unilaterally terminated Mr. Kairys—the Vice President of Sales he had hired less than two years earlier—because the company suddenly "didn't need the

$150,000 sales person" anymore.  And after Southern Pines terminated Mr. Kairys, it then refused to pay him the modest severance due under his contract.  While many of these facts and circumstances are disputed, they are, when construed in Mr. Kairys's favor at this stage, enough to draw a causal connection between, on one hand, Mr. Kairys's health condition and related medical procedures, and, on the other, his ultimate termination.  In other words, all of this evidence, taken as a whole, permits an inference that Mr. Kairys was terminated based on his disability.[3]

For these reasons, Mr. Kairys has established a *prima facie* case of disability discrimination under the ADA.

## 2.    Mr. Kairys's *prima facie* case of ADA retaliation.

To establish a *prima facie* case of retaliation under the ADA, Mr. Kairys "must show (1) protected employee activity, (2) adverse action by the employer either after or contemporaneous with the employee's protected activity, and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Yanoski v. Silgan White Cap Americas, LLC*, 179 F. Supp. 3d 413, 425 (M.D. Pa. 2016).

---

[3] Further bolstering this conclusion, when viewed in the light most favorable to Mr. Kairys, there is also evidence that at least some of Mr. Kairys's old job functions were taken over by a non-disabled employee after his termination. *See* ECF 52-7, pp. 7:17-8:3; 11:11-20; 14:9-15:10; *cf. Francis v. Lehigh Univ.*, No. 10-4300, 2013 WL 787089, at *6 (E.D. Pa. Mar. 1, 2013) ("Plaintiff rebuts this assertion, arguing that the fourth element of the prima facie test is met by fact that Lehigh replaced Plaintiff's position with a non-disabled employee.  While scant, the Court does find that Plaintiff has adduced sufficient evidence to establish a prima facie case."); *Cotter v. Am. Bridge Co.,* No. 19-592, 2021 WL 927521, at *5 (W.D. Pa. Mar. 11, 2021) (Ranjan, J.) ("In short, when viewed in the light most favorable to Ms. Cotter, the evidence here would support an inference that American Bridge replaced at least some of Ms. Cotter's corporate-level functions with a male employee, shortly after telling her those functions were unnecessary.").

Of relevance here, the ADA forbids retaliation against an employee for requesting a reasonable accommodation of his or her disability—which Mr. Kairys did by requesting time off for his hip surgery.[4] *See Shellenberger v. Summit Bancorp,*

---

[4] Southern Pines argues that Mr. Kairys admitted that he did not request a reasonable accommodation during his deposition. ECF 53, p. 16. It is true that, when questioned about whether he requested any accommodation related to his disability, Mr. Kairys replied that he did not. ECF 52-2, pp. 72:22-73:7; 74:16-76:16. But when read in context, and in the light most favorable to Mr. Kairys, he seems to have been explaining that he did not need or request any accommodations *at work* related to his disability, such as light duty. *See, e.g., id.* at pp. 72:22-73:7 ("Q: Did you ever request any sort of accommodation for your hip surgery from SPT, either before or after your surgery? A: Just a handicap parking spot that I could park in, because I [had a] handicap placard."); p. 75:10-14 ("Q: And you didn't make any accommodation request from your first surgery. Correct? A: So for the handicap [placard], like I had mentioned, but that's it. I really didn't need anything.").

The fact of the matter is that, as explained above, Mr. Kairys's request for time off to obtain surgery was, as a matter of law, a request for a reasonable accommodation of his disability. Mr. Kairys's testimony, as a layperson, cannot be deemed some type of admission on what is largely a question of law. *See Finney v. Cadia Healthcare, LLC*, No. 19-1138, 2021 WL 1518673, at *4 (D. Del. Apr. 16, 2021) ("Cadia points to Plaintiff's admission at deposition that she was '[n]ever denied FMLA.' ... I am not persuaded, however, that a layperson's answer to an ambiguous deposition question demonstrates, as a matter of law, that Cadia did not 'interfere' with Plaintiff's rights under the FMLA."); *Gallo v. City of Phila.*, No. 96-3909, 1999 WL 1212194, at *5, n.16 (E.D. Pa. Dec. 17, 1999) ("Given that this is essentially a legal point, we do not find it persuasive that the plaintiff, a layperson, was not able to make an argument during his deposition for the legal bases of his case.").

Southern Pines's argument is also ill-fitting because Mr. Kairys is not advancing a *failure-to-accommodate* claim. Rather, his contention is that Southern Pines granted his accommodation (by allowing him time off to get the surgery), but then *retaliated* against him, after the fact, for having done so. Thus, the issue is not whether Mr. Kairys's request for time off was, in fact, a valid request for a reasonable accommodation, but, instead, the lower bar of whether Mr. Kairys's request was made in "good faith," such that he could reasonably expect that he was engaged in protected activity. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 n.2 (3d Cir. 2004) (explaining that to establish an ADA retaliation claim based on a request for a reasonable accommodation, "a plaintiff need only show that she had a reasonable, good faith belief that she was entitled to request the reasonable accommodation she requested"); *see, e.g., Shellenberger,* 318 F.3d at 191 (concluding that a plaintiff could pursue a claim that defendant retaliated against her for requesting a reasonable accommodation, even though she was not disabled, because

*Inc.*, 318 F.3d 183, 191 (3d Cir. 2003) ("The right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC, and we have already explained that the ADA protects one who engages in the latter activity without regard to whether the complainant is 'disabled.'"); *see also Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 700 (E.D. Pa. 2015) ("A leave of absence for medical treatment may constitute a reasonable accommodation under the ADA."); *Wilson v. Lemington Home for the Aged*, 159 F. Supp. 2d 186, 201 (W.D. Pa. 2001) (Ambrose, J.) ("A number of courts have recognized that leave of absence for medical treatment may constitute a reasonable accommodation under the ADA.") (citations omitted).

In this case, Mr. Kairys has presented evidence to establish (1) that he engaged in "protected activity" by requesting an accommodation for his disability; (2) that he suffered an adverse employment action—termination—after engaging in that protected activity; and (3) that there was a causal connection between his protected activity and his termination (based on the evidence of causation noted above). He has thus established a *prima facie* case of retaliation under the ADA.

### 3.    Mr. Kairys's *prima facie* case of ERISA retaliation.

For much the same reasons, Mr. Kairys has established a *prima facie* case of retaliation for his use of employee benefits under an ERISA-covered plan. Section 510 of ERISA, codified at 29 U.S.C. § 1140, provides, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan … or for the purpose of interfering with the

---

"[t]he right to request an accommodation in good faith" is protected by the ADA and there was no evidence that the plaintiff's "request [for an accommodation] was motivated by anything other than good faith").

Here, there is no suggestion that Mr. Kairys's request for time off was made in bad faith. Accordingly, the ADA prohibits Southern Pines from retaliating against him for having made that request.

attainment of any right to which such participant may become entitled under the plan[.]

29 U.S.C. § 1140.

In simpler terms, this provision "prohibits employers from discharging or harassing their employees in order to keep them from obtaining employee benefits." *DiFederico v. Rolm Co.*, 201 F.3d 200, 204 (3d Cir. 2000) (cleaned up). Further, it also "supports a claim where an employee alleges that he or she was terminated in retaliation for the past exercise of protected rights" under an employee benefit plan. *Najmola v. Women's Healthcare Grp. of Pa.*, No. 13-6519, 2014 WL 3700260, at *4 (E.D. Pa. July 24, 2014) (cleaned up); *see also Kowalski v. L & F Prod.*, 82 F.3d 1283, 1287 (3d Cir. 1996) ("There is simply no limiting language in § 510 that suggests that only future benefits are protected.").

To establish a *prima facie* case of retaliation under ERISA Section 510, "an employee must show (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 922 (3d Cir. 1990) (cleaned up). Here, Mr. Kairys's *prima facie* case is intertwined with his evidence related to his ADA claim. That evidence is sufficient to allow a jury to conclude that Mr. Kairys's termination was motivated by Southern Pines's desire to either punish Mr. Kairys for using his employee benefits to pay for surgery, or, by terminating him, to ensure that he would never be able to use health benefits in the future. As a result, Mr. Kairys has established a *prima facie* case of retaliation under ERISA.

### ii. Southern Pines has articulated a non-discriminatory reason for Mr. Kairys's firing.

Next, because Mr. Kairys has established a *prima facie* case of discrimination under the ADA, and of retaliation under both the ADA and ERISA, the burden shifts to Southern Pines to articulate a legitimate, nondiscriminatory explanation for his firing. The Court finds that it has done so.

Specifically, Southern Pines suggests that Pat Gallagher decided to terminate Mr. Kairys because the company had "pretty much maxed out [its] sales capacity based on the amount of trucks and trailers [it had]," and so it "didn't need the $150,000 sales person at that time." ECF 52-1, pp. 97:10-15, 102:3-5. In other words, Mr. Gallagher claims that Mr. Kairys was fired because his position became unnecessary and his salary was too expensive. If true, these constitute nondiscriminatory reasons to fire an employee. *See Rowland v. Certainteed Corp.*, No. 08-3671, 2009 WL 1444413, at *3 (E.D. Pa. May 21, 2009) ("Without question, cutting costs is a legitimate, non-discriminatory reason for terminating an employee."); *Dusch v. Hous. Auth. of Pittsburgh*, No. 08-1021, 2010 WL 678137, at *8 (W.D. Pa. Feb. 25, 2010) (Lancaster, C.J.) (concluding that employer had proffered legitimate, nondiscriminatory reason for firing employees by asserting, among other things, that "their positions were redundant" and that their firing was "necessary for budgetary purposes").

The burden thus returns to Mr. Kairys to show that Southern Pines's explanation is pretextual.

### iii.   Mr. Kairys has presented sufficient evidence of pretext.

The crux of Southern Pines's motion, then, is whether Mr. Kairys has presented enough evidence to show that Southern Pines's nondiscriminatory explanation for his firing was actually a pretext for discrimination or retaliation. As to his ADA and ERISA claims, the Court finds that he has done so.

Preliminarily, though perhaps not sufficient to support an inference of pretext by itself, a jury could find Southern Pines's explanation of its decision to be facially lacking in credibility—particularly given Mr. Gallagher's testimony that Mr. Kairys's position was not intended to be temporary. ECF 52-1, p. 22:11-23. Essentially, Southern Pines's position is that, after maximizing its sales based on the size of its current truck fleet, it decided that it no longer needed a Vice-President of Sales, less

than two years after hiring Mr. Kairys, rather than attempting to expand its trucking capacity further or utilize Mr. Kairys to grow its business in other ways.  While perhaps a *plausible* explanation, especially if more context for that decision is provided at trial, a jury could find it to be an explanation facially lacking in credibility.

From there, as discussed above, Mr. Kairys has presented evidence that Southern Pines's CEO, Pat Gallagher—the sole decisionmaker here—was angry about Mr. Kairys's hip surgery and, specifically, the costs that it might impose on the company.  Southern Pines argues that the alleged statements by Pat and Bob Gallagher testified to by Mr. Kairys are all inadmissible hearsay, but the Court disagrees.  Rather, those statements are admissible as non-hearsay, opposing party statements.  *See* Fed. R. Evid. 801(d)(2)(D).  Both Pat and Bob Gallagher were high-ranking executives whose alleged statements in that capacity can properly be considered admissions by the company itself.  *See United States v. Bros. Const. Co. of Ohio*, 219 F.3d 300, 310–11 (4th Cir. 2000) ("Because a corporation can act only through its employees, a statement by a corporate official such a Samol can certainly be considered an admission by a corporate defendant. … The corporation's agent need not have authority to make the statement at issue, but rather the subject of the statement must relate to the employee's area of authority.") (citations omitted); *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 297–98 (3d Cir. 2007) ("[B]eing a direct decision-maker, of course, constitutes strong proof that a statement was made within the scope of employment[.]" (cleaned up)).

Thus, if the jury believes Mr. Kairys's testimony regarding Mr. Gallagher's statements and reaction to his surgery, that would amount to significant, circumstantial evidence that unlawful, retaliatory animus may have been the real reason for Mr. Kairys's firing less than five months after the surgery.  As noted above, Section 510 of ERISA forbids terminating or otherwise retaliating against an

employee for using employer health benefits. *See DiFederico*, 201 F.3d at 204; *Kowalski*, 82 F.3d at 1287; *Najmola*, 2014 WL 3700260, at *4. Likewise, the ADA forbids Southern Pines from retaliating against Mr. Kairys for requesting the reasonable accommodation of time off for his hip surgery. *See Shellenberger*, 318 F.3d at 191*; Sowell*, 139 F. Supp. 3d at 700; *Wilson*, 159 F. Supp. 2d at 201. Here, a jury could infer either motive from Mr. Gallagher's alleged reaction to Mr. Kairys's surgery.

In addition to this evidence, a jury could further infer pretext (or bolster its inference of pretext) if it believes Mr. Kairys's testimony that he told Mr. Gallagher about his surgery in advance. Such testimony would tend to discredit Mr. Gallagher's excuse that he was "upset" only because Mr. Kairys did not advise him of the surgery beforehand. ECF 52-1, pp. 53:8-14, 55:4-7.

These same considerations support an inference of pretext with respect to Mr. Kairys's disability-discrimination claim, as well. That is, while retaliation may seem to be a better fit for the evidence, a jury that disbelieves Southern Pines's explanation could also reasonably infer that that animus toward Mr. Kairys's disability—*e.g.*, assumptions that Mr. Kairys's disability would continue to cause the company to incur troublesome medical expenses—drove the decision to terminate. Indeed, given that he used medical benefits to obtain treatment for his disability, and that he requested a reasonable accommodation in the form of time off to obtain that treatment, Mr. Kairys's ADA and ERISA claims appear to be closely intertwined, such that they will likely rise or fall together.

For all these reasons, the Court will deny summary judgment as to Mr. Kairys's ADA discrimination, ADA retaliation, and ERISA retaliation claims.

### B. Mr. Kairys has raised a genuine dispute of material fact as to his ADEA discrimination claim.

Mr. Kairys's age-discrimination claim calls for a similar analysis.

Initially, the Court finds that Mr. Kairys has satisfied his *prima facie* burden as to his ADEA claim.  That is, he has presented evidence which, when viewed in the light most favorable to him, shows: (1) that he is at least 40 years old; (2) that he suffered an adverse employment decision (termination); (3) that he was qualified for his position; and (4) that he was replaced, at least in part, by a younger employee (Kyle Kunkle).[5]  *See Johnson v. Phila. Hous. Auth.*, 218 F. Supp. 3d 424, 434 (E.D. Pa. 2016).

The slightly trickier issue is pretext.  As discussed above, the Court has already found that Mr. Kairys has presented sufficient evidence to cast doubt on whether Southern Pines's nondiscriminatory explanation is credible.  But the weight of that pretext evidence points to Mr. Kairys's *disability*, or his use of medical benefits, as the potential "real" motivation for his firing.  On the other hand, there is very little evidence that specifically implies age-related animus.  So that raises the question— is the fact that Mr. Kairys has cast doubt on Southern Pines's explanation enough to support a jury's inference of *age* discrimination, if that doubt arises almost exclusively from evidence of *disability-* or *ERISA*-related animus?

After careful consideration, the Court finds that it is enough, for two reasons.  First, the Third Circuit has made clear that where a plaintiff has satisfied its *prima facie* burden, it may show pretext by doing no more than presenting evidence "that would allow a factfinder to disbelieve the employer's reason for the adverse employment action."  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citation omitted).  Conversely, the Court has found no authority

---

[5] In the alternative to showing that he was replaced by a younger employee, Mr. Kairys may point to "facts relating to the adverse action that, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Johnson*, 218 F. Supp. 3d at 434 (cleaned up).  The Court finds that Mr. Kairys could satisfy this alternative *prima facie* burden with the pretext evidence discussed herein, even if he was not "replaced" by Mr. Kunkle.

for the proposition that it could grant summary judgment in circumstances where a jury could reasonably find that Southern Pines's explanation is false, but the Court believes that the false explanation was more likely pretext for a different type of discrimination.   Thus, since Mr. Kairys has presented a *prima facie* case of age discrimination and successfully cast doubt on Southern Pines's nondiscriminatory explanation, that ends the inquiry.   The right course, then, is to allow a jury to answer the further question of whether "the real reason [for Mr. Kairys's termination] was impermissible [age] discrimination," *id*. at 645, rather than (or in addition to) another type of discrimination or retaliation.

Separately, while it is true that the main thrust of Mr. Kairys's pretext evidence suggests disability- or ERISA-related retaliation, those motivations are not so easily disentangled from age.   Indeed, Mr. Kairys's disability (arthritis) is closely tied to age, and it would not be unreasonable for a jury to infer, from its disbelief of Southern Pines's explanation, that part of what motivated Mr. Kairys's termination was a discriminatory fear that his medical expenses were likely to recur due to his age.   In short, even if there are hypothetical cases where the evidence so strongly suggests pretext to conceal one type of discrimination that no reasonable jury could find the employer's explanation was pretext for another, that is not the situation here.

For these reasons, the Court concludes that, because Mr. Kairys has provided a basis for a jury to disbelieve Southern Pines's explanation of his firing, he has presented sufficient evidence of pretext for purposes of his age discrimination claim, as well.

## II. The Court will deny Southern Pines's motion for summary judgment and grant in part Mr. Kairys's cross-motion for summary judgment as to his breach-of-contract and WPCL claims.

The remainder of Southern Pines's motion, and the entirety of Mr. Kairys's cross-motion, relate to Mr. Kairys's claims for breach of contract and violations of the

Pennsylvania Wage Payment and Collection Law ("WPCL"). Both of these claims arise from Southern Pines's alleged breach of its contractual obligation, under an employment agreement, to pay Mr. Kairys one week of separation pay for every year he served the company, unless he was terminated for specified misconduct. It is undisputed that Mr. Kairys was not terminated for any misconduct.

For the following reasons, the Court will grant Mr. Kairys's motion for summary judgment on his breach of contract claim *as to liability only*, and otherwise deny both parties' motions.

### A. Mr. Kairys is entitled to summary judgment on his breach-of-contract claim as to liability, but not damages.

With respect to Mr. Kairys's contract claim, Southern Pines does not dispute that it was obligated to pay Mr. Kairys separation pay under his employment agreement. Rather, it argues (1) that Mr. Kairys has "unclean hands," and thus cannot recover, because he has not abided by the non-solicitation provisions of his employment agreement since leaving Southern Pines; and (2) that Mr. Kairys was overpaid by more than the amount of any separation pay owed because he used vacation time without properly reporting it to Southern Pines. After careful consideration, the Court rejects Southern Pines's first argument, and concludes that its latter argument goes only to damages, rather than liability.

First, even if it is true that Mr. Kairys breached his non-solicitation agreement (which is far from clear), the doctrine of unclean hands would not bar Mr. Kairys's breach of contract claim. "The affirmative defense of unclean hands ... is equitable in nature and cannot be raised as a defense to legal claims." *FDIC v. Musser*, No. 12-7231, 2017 WL 878208, at *6 (E.D. Pa. Mar. 6, 2017) (cleaned up). Moreover, "[a] suit for money damages in a breach of contract," such as this one, "is a quintessential legal, not equitable, matter." *Id*. Thus, the defense of "unclean hands" is not available to Southern Pines. *See Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.*, 280 F.

Supp. 2d 184, 196 (S.D.N.Y. 2003) ("[U]nclean hands is an equitable defense and unavailable in an action seeking money damages as in the instant case."); *Datasphere, Inc. v. Computer Horizons Corp.*, No. 05-2717, 2009 WL 2132431, at *9 (D.N.J. July 13, 2009) ("Courts widely agree that equitable affirmative defenses cannot defeat a claim at law for breach of contract.").

In any event, the Court notes that, if Mr. Kairys indeed breached any of his own obligations under the contract, Southern Pines could have sued, or brought a counterclaim in this case, to enforce his non-solicitation agreement. Additionally, Mr. Kairys was owed separation wages at the time he was fired, while his supposed breach of the non-solicitation agreement did not occur until long after that. Indeed, it seems that Southern Pines only learned of the alleged solicitations of common customers, in an industry that Southern Pines may not even directly compete in, through discovery in this case. Thus, even if the doctrine of unclean hands could apply in theory, the Court does not find Southern Pines's assertions of bad faith and harm to be supported by any evidence in the record.

Second, Southern Pines's claim that it is entitled to offset Mr. Kairys's separation pay based on overpaid vacation time is either an affirmative defense or a counterclaim that goes to damages, rather than liability. *See Electro-Catheter Corp. v. Surgical Specialties Instrument Co.*, 587 F. Supp. 1446, 1456–57 (D.N.J. 1984) ("The defendant's assertions of its entitlement to an offset does not preclude this court from granting partial summary judgment on these contract claims since no material facts remain for adjudication."); *Cont'l Can Co. v. Michael C., Birnkrant, Jr. Interests, Inc.*, No. 89-2682, 1990 WL 140989, at *3 (N.D. Ill. Sept. 27, 1990) ("[W]here undisputed material facts establish the defendant's liability and the only facts in dispute involve the amount of damages due the plaintiff because the plaintiff's prayer may be subject to set-off, summary judgment is appropriate."); *Waxman v. Envipco Pick Up & Processing Servs., Inc.*, No. 02-10132, 2006 WL 236818, at *12 (S.D.N.Y.

- 22 -

Jan. 17, 2006) ("For the foregoing reasons, defendants' motion is granted as to liability with respect to its conversion counterclaim, but denied as to the question of damages, which will be deferred to trial, to permit the finder of fact to determine the amount of the funds in the JP Morgan accounts, as well as what, if any, payments made by plaintiff out of those funds should be subtracted from defendants' damages. And of course, the amount of such damages will ultimately be offset against the damages owed to plaintiffs on their breach-of-contract claim.").

Moreover, the Court cannot resolve Southern Pines's entitlement to an offset on summary judgment in either direction, as disputes of material fact exist. Indeed, the parties dispute whether Mr. Kairys was, in fact, overpaid for vacation at all— including disputing whether Southern Pines follows the vacation payment policy that is the basis for its claim to have overpaid Mr. Kairys, as well as whether Mr. Kairys was actually working during all or some of his purported vacation. Mr. Kairys also suggests that Southern Pines is barred from seeking an offset by the "voluntary payment doctrine," because he notified the company that he was taking vacation time, he was never told to formally request time off through the company's software system, and Southern Pines elected to voluntarily pay him his full salary anyway, with full knowledge of the facts. In the Court's view, these are all fact-laden disputes that must be resolved by a jury on a more fully developed record.

Finally, Mr. Kairys argues that Southern Pines has waived any offset defense or counterclaim by failing to plead it in its Answer, and thus that he is entitled to summary judgment for breach of contract as to both liability and damages. Not so.

To begin with, Southern Pines did preserve this defense, and put Mr. Kairys on notice, by asserting, in all of its Answers, that it "has paid all amounts due and owing to Plaintiff," including "all amounts in excess of any paid time off that Plaintiff did not apparently record or report during his employment with Defendant." ECF

76, ¶¶ 35, 64, Aff. Def. 20.  Mr. Kairys was free to explore those contentions further during discovery.

But in any event, given the liberal policy toward amendment of pleadings, the Court would be well within its discretion to allow Southern Pines to amend its Answer to assert any more specific affirmative defense or counterclaim related to the alleged overpayment prior to trial.  There is unlikely to be any additional significant discovery related to that defense, and Mr. Kairys will have sufficient time to prepare for trial.  *See Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, No. 09-185, 2011 WL 13229623, at *3 (E.D. Va. Mar. 11, 2011) ("Under the liberal standards that favor granting leave to amend, courts have been reluctant to adhere strictly to the requirements of Rule 8(c) when the goals of the rule have otherwise been met; notice and opportunity to prepare."); *Blouin v. Kaiser Aluminum & Chem. Corp.*, No. 95-0503, 1995 WL 731689, at *1 (E.D. La. Dec. 8, 1995) ("Defendant's amended answer raises few, if any, new factual issues. Enough time remains before trial for plaintiff to conduct discovery on those issues and for plaintiff to research any new legal issues raised in the amended answer. In light of Federal Rule of Civil Procedure Rule 15's liberal policy towards the amendment of pleadings, IT IS ORDERED that plaintiff's motion for leave to file an amended answer is GRANTED.").

At bottom, then, what the Court is left with is an undeniable breach of contract—*i.e.*, a failure by Southern Pines to pay separation pay due under an unambiguous employment agreement—but a dispute of material fact as to the amount of damages owed.  Given the fact-laden nature of this dispute, the damages issue is best left to the jury to decide.

### B.     Mr. Kairys has raised a genuine dispute of material fact as to his WPCL claim, but he is not entitled to summary judgment.

Finally, Mr. Kairys's claim for violations of the Pennsylvania WPCL is also not amenable to resolution, in either party's favor, on summary judgment.

To begin with, summary judgment cannot be entered as to this claim because, as with the breach-of-contract claim, there is a dispute about whether Mr. Kairys was actually paid some or all the amount he was owed, due to alleged overpayments for vacation time. *Cf. Meyers v. Penn N. Centers for Advanced Wound Care, P.C.*, No. 11-182, 2014 WL 1317567, at *1 (W.D. Pa. Mar. 28, 2014) (Cohill Jr., J.) ("For the reasons that follow we conclude that Meyers is owed wages for three pay periods in 2008, but that he is not due vacation pay or reimbursement for unpaid expenses. In addition, we conclude that Meyers was overpaid for his expenses, which will be set-off against his award for unpaid wages."). Unlike with the breach-of-contract claim, however, this issue impacts both liability and damages here, as Southern Pines cannot be held liable for failing to pay wages that it has, in fact, paid.

The other issue is that there remains a dispute of material fact as to whether Southern Pines's failure to pay Mr. Kairys his separation pay was in "bad faith." Under the WPCL, Mr. Kairys is entitled to liquidated damages equal to 25% of the total amount of any unpaid wages due, 43 P.S. § 260.10, unless Southern Pines demonstrates by "clear and convincing evidence" that it acted in "good faith." *See Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 962-63 (Pa. Super. Ct. 2011), *aff'd* 106 A.3d 656 (Pa. 2014). "A reasonable, although incorrect legal conclusion, does not equate to a lack of good faith." *Giacone v. Virtual Officeware, LLC*, No. 13-1558, 2015 WL 1405429, at *8 (W.D. Pa. Mar. 26, 2015) (Schwab, J.), *aff'd*, 642 F. App'x 137 (3d Cir. 2016). However, the employer must have had a good faith basis for contesting the plaintiff's wage claim at the time it did so. An employer may not "invoke[e] a justification, legal or otherwise, after the fact." *Id.* (citation omitted).

Here, Mr. Kairys argues that Southern Pines acted in bad faith, because it made no effort to determine how much vacation time he had been overpaid for and then pay him any balance he was due. Under the WPCL, "[i]n case of a dispute over wages, the employer shall give written notice to the employe[e] or his counsel of the

- 25 -

amount of wages which he concedes to be due and shall pay such amount without condition within the time set by this act." 43 Pa. Stat. § 260.6. Here, however, Southern Pines has outright failed to pay Mr. Kairys any of the $5,384.62 he was otherwise owed in separation pay, did not contemporaneously advise him of the basis for withholding his separation payment, and appears to have no intention of paying him now. That conduct would certainly support a finding of bad faith.

That said, while Mr. Kairys has provided evidence of bad faith, the final determination that Southern Pines acted in bad faith is still better decided by a jury, given the factual disputes that clearly exist on this issue. That's because even "bad judgment does not prevent an employer from acting in good faith under the WPCL." *Hartman v. Baker*, 766 A.2d 347, 355 (Pa. Super. Ct. 2000). Put another way, Southern Pines insists that it had a genuine, good-faith belief that it did not owe Mr. Kairys any further wages because it overpaid him for vacation time. It remains for a jury, not the Court, to divine Southern Pines's intent and decide if that excuse is genuine or reasonable in the face of the contrary evidence Mr. Kairys presents.

## <u>CONCLUSION</u>

For all the reasons discussed above, Southern Pines's motion for summary judgment will be denied and Mr. Kairys's cross-motion for summary judgment will be granted in part and denied in part. Specifically, the Court will grant Mr. Kairys's motion for summary judgment as to liability only on his breach-of-contract claim, and otherwise deny both parties' motions. An appropriate order follows.

DATE: May 24, 2021                              BY THE COURT:

                                                /s/ *J. Nicholas Ranjan*
                                                United States District Judge